**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Conopco, Inc. and Reckitt Benckiser Inc.,              CASE NO.

　　　　　　Plaintiffs,

vs.

Arkema, Inc. f/k/a Atofina Chemicals, Inc. f/k/a
Elf Atochem North America, Inc., Arkema S.A.
f/k/a Atofina S.A. f/k/a Elf Atochem S.A., Total
S.A. f/k/a TotalFinaElf S.A. f/k/a TotalFina, S.A.
f/k/a Total, S.A., FMC Corporation, Solvay
Chemicals, Inc., Solvay America, Inc., Solvay
S.A., EKA Chemicals, Inc., Akzo Nobel, Inc.,
Akzo Nobel N.V., Kemira Chemicals, Inc. and
Kemira Oyj,

　　　　　　Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

　　　　Plaintiffs Conopco, Inc. and Reckitt Benckiser Inc. (individually and collectively "Plaintiffs")

sue Arkema, Inc. f/k/a Atofina Chemicals, Inc. f/k/a Elf Atochem North America, Inc., Arkema S.A.

f/k/a Atofina S.A. f/k/a Elf Atochem S.A., Total S.A. f/k/a TotalFinaElf S.A. f/k/a TotalFina, S.A.

f/k/a Total, S.A., FMC Corporation, Solvay Chemicals, Inc., Solvay America, Inc., Solvay S.A., EKA

Chemicals, Inc., Akzo Nobel, Inc., Akzo Nobel N.V., Kemira Chemicals, Inc. and Kemira Oyj

(individually and collectively "Defendants") and allege as follows:

### NATURE OF ACTION

　　　　1.　　This lawsuit concerns the international cartelization of Hydrogen Peroxide and

Sodium Perborate and Sodium Percarbonate. Sodium Perborate and Sodium Percarbonate are

individually and collectively referred to in this Complaint as "Persalts." Hydrogen Peroxide is a

major or important ingredient in Persalts.

## KENNY NACHWALTER, P.A.

2.      Plaintiffs allege that Defendants' and their co-conspirators' conduct in each Count of this Complaint constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for which Plaintiffs are entitled to damages and injunctive relief.

(a)      Count I alleges that Defendants conspired not to compete on the sale of Hydrogen Peroxide that Defendants manufactured and directly sold to Plaintiffs and others.

(b)      Count II alleges that Defendants conspired not to compete on the sale of Persalts that they manufactured and sold directly to Plaintiffs and others.

3.      The allegations in this Complaint are pled in the alternative if necessary to avoid inconsistency.

## JURISDICTION AND VENUE

4.      These civil antitrust claims arise under Section 1 of the Sherman Act, 15 U.S.C. § 1, for treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a), and for permanent injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26.

5.      This Court has subject matter jurisdiction of each of the claims in this action pursuant to 28 U.S.C. §§ 1331 & 1337.

6.      Venue is proper in this Court pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 & 22, and 28 U.S.C. § 1391, for any one or more of the reasons stated in the subparagraphs below.  Each of the subparagraphs below should be read in the alternative if necessary to avoid inconsistency.

(a)      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, including the sale at artificially high prices of Hydrogen Peroxide and/or Persalts.

KENNY NACHWALTER, P.A.

(b)     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because each Defendant is subject to personal jurisdiction in this District.

(c)     Defendants transact business or are found in this District, or in the case of the foreign Defendants, they transact business directly and/or through the activities of domestic subsidiaries and affiliates whom each foreign Defendant dominates and controls within this District and therefore, venue is proper under 15 U.S.C. § 22.

(d)     The following Defendants maintain their principal place of business in this District: Atofina Chemicals, Inc. and FMC Corporation.

(e)     The following Defendants are legal aliens and may be sued in any District pursuant to 28 U.S.C. § 1391(d): Arkema S.A. f/k/a Atofina S.A. f/k/a Elf Atochem S.A.; Total S.A. f/k/a TotalFinaElf S.A. f/k/a TotalFina, S.A. f/k/a Total, S.A.; Solvay S.A.; Akzo Nobel N.V.; and Kemira Oyj.

(f)     To the extent that there is no District in which this action may otherwise be brought, then venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because one or more Defendants is found in this District.

7.     Defendants are subject to the personal jurisdiction of this Court for any one or more of the reasons stated in the subparagraphs below.  Each of the subparagraphs should be read in the alternative if necessary to avoid inconsistency.

(a)     Defendants are amenable to service of process because each inhabits, transacts business in, has continuous or systematic contacts with, or is found or has sufficient minimum contacts in the United States sufficient to satisfy due process.

(b)     Defendants are amenable to service of process because each inhabits, transacts business in, or is found in this District.  Defendants headquartered outside this District

3

KENNY NACHWALTER, P.A.

are nevertheless engaged in the business of developing, manufacturing, distributing, advertising and/or selling Hydrogen Peroxide and/or Persalts throughout the United States, including in this District.

(c)     Defendants are amenable to service of process because each Defendant belonged to the conspiracy alleged in this Complaint and one or more of them, and their co-conspirators, performed unlawful acts in furtherance of the conspiracy in this District including, without limitation, selling Hydrogen Peroxide and/or Persalts to Plaintiffs and others in this District at artificially inflated prices.

(d)     Defendants are amenable to service of process pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and the long-arm statute of the State in which this Federal Court sits because each Defendant has transacted business in the State and because the State's long-arm statute extends jurisdiction to the limits of due process and each Defendant has sufficient minimum contacts with the State to satisfy due process.

(e)     This Court has personal jurisdiction over Defendants because they and one or more of their co-conspirators contracted to supply services or goods, including Hydrogen Peroxide and/or Persalts, or have agents who contracted to supply materials or goods, including Hydrogen Peroxide and/or Persalts, in Pennsylvania; money flowed from Plaintiffs or other purchasers in Pennsylvania to pay Defendants and their co-conspirators for Hydrogen Peroxide and/or Persalts; Defendants and one or more of their co-conspirators transact business in Pennsylvania or have agents who transact business on their behalf in Pennsylvania in furtherance of the conspiracy; Defendants and their co-conspirators did or caused one or more unlawful acts to be done, or consequences to occur, in Pennsylvania; and Defendants and their co-conspirators

4

KENNY NACHWALTER, P.A.

engaged in unlawful conduct described below outside of Pennsylvania causing injury to Plaintiffs in Pennsylvania.

## PARTIES

### PLAINTIFFS

8.      Conopco, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York. Conopco, Inc. is a wholly-owned subsidiary of Unilever United States, Inc. Conopco manufactures and/or sells a variety of consumer products under a variety of different brands. Conopco, Inc. brings this case on behalf of itself, its divisions, subsidiaries, affiliates, predecessors-in-interest and assigns (collectively "Conopco"). During time periods relevant to the allegations in this Complaint, Conopco directly purchased Hydrogen Peroxide and/or Persalts in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

9.      Reckitt Benckiser Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey. Reckitt Benckiser manufactures and/or sells a variety of consumer products under a variety of different brands. Reckitt Benckiser brings this case on behalf of itself, its divisions, subsidiaries, affiliates, predecessors-in-interest and assigns (collectively "Reckitt Benckiser"). During time periods relevant to the allegations in this Complaint, Reckitt Benckiser directly purchased Hydrogen Peroxide and/or Persalts in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

10.      Plaintiffs are each a "person" with standing to sue Defendants for damages and other relief under Section 1 of the Sherman Act, 15 U.S.C. § 1. During time periods relevant to the

KENNY NACHWALTER, P.A.

allegations in this Complaint, Defendants and their co-conspirators manufactured both Hydrogen Peroxide and Persalts, and Defendants and their co-conspirators sold Persalts and Hydrogen Peroxide directly to Plaintiffs.  Plaintiffs also have standing to sue because, during time periods relevant to the allegations in this Complaint, they directly purchased from Defendants and their co-conspirators Persalts, and Hydrogen Peroxide and/or Hydrogen Peroxide contained in Persalts (individually and collectively "Hydrogen Peroxide"), each of which was manufactured by Defendants and their co-conspirators.   Further, during time periods relevant to the allegations in this Complaint, Plaintiffs directly purchased from Defendants and their co-conspirators a product – Persalts – whose important or dominant ingredient (Hydrogen Peroxide) is a price-fixed product which Defendants and their co-conspirators manufactured. *See In re Sugar Industry Antitrust Litigation*, 579 F.2d 13, 15-19 (3d Cir. 1978) (direct purchasers of candy (*i.e.,* sugar-containing products) from defendants had standing to sue defendants for conspiring to fix sugar prices); *In re Linerboard Antitrust Litigation*, 305 F.3d 145, 159-160 (3rd Cir. 2002) (direct purchasers of corrugated boxes and sheets from defendants had standing to sue defendants for conspiring to fix prices of linerboard used to manufacture corrugated boxes and sheets), *aff'g* 203 F.R.D. 197, 216 (E.D. Pa. 2001) ("[P]laintiffs in this case purchased corrugated sheets or boxes directly from the defendants.  Like the candy in *In re Sugar Industries* which contained allegedly price fixed sugar, the corrugated sheets and boxes contain linerboard that was subject to an agreement on output, which is equivalent to a price-fixing agreement.  The plaintiffs are direct purchasers and, therefore, are entitled to recover the full amount of any overcharge.") (record citations omitted).

6

KENNY NACHWALTER, P.A.

### DEFENDANTS

### The Atofina Defendants

11.     Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.  Arkema, Inc. is the successor corporation of Atofina Chemicals, Inc. and Elf Atochem North America, Inc. (collectively "Arkema").  During time periods relevant to the allegations in this Complaint, Arkema, directly and/or through or on behalf of Arkema S.A. and/or Total S.A., manufactured, distributed and/or directly sold Persalts and Hydrogen Peroxide to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

12.     Arkema S.A. f/k/a Atofina S.A. f/k/a Elf Atochem S.A. (collectively "Arkema S.A.") is a corporation organized and existing under the laws of France. During time periods relevant to the allegations in this Complaint, Arkema S.A., directly, through Arkema and/or on behalf of Total S.A., manufactured, distributed and/or directly sold Persalts and Hydrogen Peroxide to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

13.     Total S.A. is corporation organized under the laws of France with its principal place of business in Paris, France.  Total S.A. is the successor of TotalFinaElf S.A., TotalFina, S.A. and Total, S.A. (collectively "Total S.A.").  During time periods relevant to the allegations in this Complaint, Total S.A., directly and/or through Arkema S.A. and/or Arkema, manufactured, distributed and/or directly sold Persalts and Hydrogen Peroxide to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

KENNY NACHWALTER, P.A.

14.     (a)     Arkema, Arkema S.A. and Total S.A. were each members of the conspiracy alleged in this Complaint because, among other reasons, each of them participated in the conspiracy through the actions of their respective officers, employees and representatives.

(b)     Alternatively, Arkema S.A. was a member of the conspiracy alleged in this Complaint because of, among other reasons, its status during time periods relevant to these allegations, including during the conspiracy alleged below, as the alter ego or agent of Total S.A. as evidenced by, among other things, and based upon information and belief, Total S.A.'s domination or control over:  the prices at which Arkema S.A. sold Persalts and/or Hydrogen Peroxide; the hiring and firing of officers or members of the Board of Directors of Arkema S.A.; the budgets for Arkema S.A.; the capitalization of and/or loans to Arkema S.A.; the transfer of officers or employees between Total S.A. and Arkema S.A.; financial benefits provided to officers or employees of Arkema S.A.; the business plan or operation of Arkema S.A.; and/or officers or employees of Total S.A. communicated with, serviced or called on purchasers of Persalts and/or Hydrogen Peroxide despite the presence or with the knowledge of Arkema S.A.  The foregoing specific allegations reveal that during the conspiracy as alleged in this Complaint, Total S.A. dominated or controlled Arkema S.A. with respect to conspiracy activities as alleged below, and Total S.A. used that domination or control over Arkema S.A. to charge Plaintiffs and others artificially higher prices for Hydrogen Peroxide and Persalts which proximately caused injury and damages to Plaintiffs and others.

(c)     Alternatively, Arkema was a member of the conspiracy alleged in this Complaint because of, among other reasons, its status during time periods relevant to these allegations, including during the conspiracy alleged below, as the alter ego or agent of Arkema S.A. and/or Total S.A. as evidenced by, among other things, and based upon information and belief,

8

Arkema S.A.'s and/or Total S.A.'s domination or control over:  the prices at which Arkema sold Persalts and/or Hydrogen Peroxide; the hiring and firing of officers or members of the Board of Directors of Arkema; the budgets for Arkema; the capitalization of and/or loans to Arkema; the transfer of officers or employees between Arkema S.A. and/or Total S.A. and Arkema; financial benefits provided to officers or employees of Arkema; the business plan or operation of Arkema; and/or officers or employees of Arkema S.A. and/or Total S.A. communicated with, serviced or called on purchasers of Persalts and/or Hydrogen Peroxide despite the presence or with the knowledge of Arkema.  The foregoing specific allegations reveal that during the conspiracy as alleged in this Complaint, Arkema S.A. and/or Total S.A. dominated or controlled Arkema with respect to conspiracy activities as alleged below, and Arkema S.A. and/or Total S.A. used that domination or control over Arkema to charge Plaintiffs and others artificially higher prices for Hydrogen Peroxide and Persalts which proximately caused injury and damages to Plaintiffs and others.

15.    Arkema, Arkema S.A. and Total S.A. are collectively referred to in this Complaint as the "Atofina Defendants."

**FMC Corporation**

16.    FMC Corporation ("FMC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Philadelphia, Pennsylvania.  During time periods relevant to the allegations in this Complaint, FMC manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

9

KENNY NACHWALTER, P.A.

**The Solvay Defendants**

17.     Solvay America, Inc. ("Solvay America") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas. Solvay America is a wholly-owned subsidiary of Solvay S.A.  During time periods relevant to the allegations in this Complaint, Solvay America, directly and/or through or on behalf of Solvay S.A., manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

18.     Solvay Chemicals, Inc. ("Solvay Chemicals") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas. Solvay Chemicals is a product of the combination of Solvay Interox, Solvay Minerals, and Solvay Fluorides.  Solvay Chemicals is a wholly-owned subsidiary of Solvay America, Inc.  During time periods relevant to the allegations in this Complaint, Solvay Chemicals, directly and/or on behalf of Solvay America and/or Solvay S.A., manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

19.     Solvay S.A. ("Solvay S.A.") is a corporation organized and existing under the laws of Belgium with its principal place of business in Brussels, Belgium.  During time periods relevant to the allegations in this Complaint, Solvay S.A., directly and/or through its wholly-owned subsidiaries, including Solvay America and Solvay Chemicals, manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

KENNY NACHWALTER, P.A.

20.    (a)    Solvay America, Solvay Chemicals and Solvay S.A. each were members of the conspiracy alleged in this Complaint because of, among other reasons, their respective participation in the conspiracy through the actions of their respective officers, employees and representatives.

(b)    Alternatively, Solvay America and Solvay Chemicals were members of the conspiracy alleged in this Complaint because of, among other reasons, their status during time periods relevant to these allegations, including during the conspiracy alleged below, as the alter egos or agents of Solvay S.A. as evidenced by, among other things, and based upon information and belief, Solvay S.A.'s domination or control over: the prices at which Solvay America and/or Solvay Chemicals sold Hydrogen Peroxide and Persalts; the hiring and firing of officers or members of the Board of Directors of Solvay America and/or Solvay Chemicals, Inc.; the budgets for Solvay America and/or Solvay Chemicals; the capitalization of and/or loans to Solvay America and/or Solvay Chemicals; the transfer of officers or employees between Solvay S.A. and Solvay America and/or Solvay Chemicals; financial benefits provided to officers or employees of Solvay America and/or Solvay Chemicals; the business plan or operation of Solvay America and/or Solvay Chemicals; and/or officers or employees of Solvay S.A. communicated with, serviced or called on purchasers of Hydrogen Peroxide and Persalts despite the presence or with the knowledge of Solvay America and/or Solvay Chemicals.  The foregoing specific allegations reveal that during the conspiracy as alleged below, Solvay S.A. dominated or controlled Solvay America and Solvay Chemicals with respect to conspiracy activities as alleged in this Complaint, and Solvay S.A. used that domination or control over Solvay America and Solvay Chemicals to charge Plaintiffs and others artificially higher prices for Hydrogen Peroxide and Persalts which proximately caused injury and damages to Plaintiffs and others.

11

KENNY NACHWALTER, P.A.

21.     Solvay America, Inc., Solvay Chemicals, Inc. and Solvay S.A. are collectively referred to in this Complaint as the "Solvay Defendants."

**The Akzo Defendants**

22.     EKA Chemicals, Inc. ("EKA Chemicals") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Marietta, Georgia.  EKA Chemicals is a wholly-owned subsidiary of Akzo Nobel, Inc., which, in turn, is a wholly-owned subsidiary of Akzo Nobel N.V.  During time periods relevant to the allegations in this Complaint, EKA Chemicals, directly and/or on behalf of Akzo Nobel, Inc. and/or Akzo B.V., manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

23.     Akzo Nobel, Inc. ("Akzo Nobel") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.  Akzo Nobel is a wholly-owned subsidiary of Akzo Nobel N.V., and is the parent of EKA Chemicals.  During time periods relevant to the allegations in this Complaint, Akzo Nobel, directly, through EKA Chemicals and/or on behalf of Akzo B.V., manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

24.     Akzo Nobel N.V. ("Akzo N.V.") is a corporation organized and existing under the laws of The Netherlands with its principal place of business in The Netherlands.  During time periods relevant to the allegations in this Complaint, Akzo N.V., directly and/or through Akzo Nobel and/or EKA Chemicals, manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

12

KENNY NACHWALTER, P.A.

25.    (a)    EKA Chemicals, Akzo Nobel and Akzo N.V. were all members of the conspiracy alleged in this Complaint because of, among other reasons, their participation in the conspiracy through the actions of their respective officers, employees and representatives.

(b)    Alternatively, EKA Chemicals and Akzo Nobel were members of the conspiracy alleged below because of, among other reasons, their status during time periods relevant to these allegations, including during the conspiracy alleged in this Complaint, as the alter egos or agents of Akzo N.V. as evidenced by, among other things, and based upon information and belief, Akzo N.V.'s domination or control over:  the prices at which EKA Chemicals and/or Akzo Nobel sold Hydrogen Peroxide and Persalts; the hiring and firing of officers or members of the Board of Directors of EKA Chemicals and/or Akzo Nobel; the budgets for EKA Chemicals and/or Akzo Nobel; the capitalization of and/or loans to  EKA Chemicals and/or Akzo Nobel; the transfer of officers or employees between Akzo N.V. and  EKA Chemicals and/or Akzo Nobel; financial benefits provided to officers or employees of  EKA Chemicals and/or Akzo Nobel; the business plan or operation of EKA Chemicals and/or Akzo Nobel; and/or officers or employees of Akzo N.V. communicated with, serviced or called on purchasers of Persalts despite the presence or with the knowledge of EKA Chemicals and/or Akzo Nobel.  The foregoing specific allegations reveal that during the conspiracy as alleged in this Complaint, Akzo N.V. dominated or controlled EKA Chemicals and Akzo Nobel with respect to conspiracy activities as alleged below, and Akzo N.V. used that domination or control over EKA Chemicals and Akzo Nobel to charge Plaintiffs and others artificially higher prices for Hydrogen Peroxide and Persalts which proximately caused injury and damages to Plaintiffs and others.

26.    EKA Chemicals, Inc., Akzo Nobel, Inc. and Akzo Nobel N.V. are collectively referred to in this Complaint as the "Akzo Defendants."

13

KENNY NACHWALTER, P.A.

**The Kemira Defendants**

27.     Kemira Chemicals, Inc. ("Kemira") is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Kennesaw, Georgia.  Kemira is a wholly-owned subsidiary of Kemira Oyj.  During time periods relevant to the allegations in this Complaint, Kemira, directly and/or on behalf of Kemira Oyj, manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

28.     Kemira Oyj ("Kemira Oyj") is a corporation organized and existing under the laws of Finland with its principal place of business in Helsinki, Finland.  During time periods relevant to the allegations in this Complaint, Kemira Oyj, directly and/or through Kemira, manufactured, distributed and/or directly sold Hydrogen Peroxide and Persalts to Plaintiffs and others in the United States and elsewhere, and engaged in conduct described below in violation of 15 U.S.C. §1.

29.     (a)     Kemira and Kemira Oyj were both members of the conspiracy alleged below because of, among other reasons, their participation in the conspiracy through the actions of their respective officers, employees and representatives.

(b)     Alternatively, Kemira was a member of the conspiracy alleged in this Complaint because of, among other reasons, its status during time periods relevant to these allegations, including during the conspiracy alleged below, as the alter ego or agent of Kemira Oyj as evidenced by, among other things, and based upon information and belief, Kemira Oyj's domination or control over:  the prices at which Kemira sold Hydrogen Peroxide and Persalts; the hiring and firing of officers or members of the Board of Directors of Kemira; the budgets for Kemira; the capitalization of and/or loans to Kemira; the transfer of officers or employees between Kemira Oyj and Kemira; financial benefits provided to officers or employees of Kemira; the business

14

KENNY NACHWALTER, P.A.

plan or operation of Kemira; and/or officers or employees of Kemira Oyj communicated with, serviced or called on purchasers of Hydrogen Peroxide and Persalts despite the presence or with the knowledge of Kemira. The foregoing specific allegations reveal that during the conspiracy as alleged below, Kemira Oyj dominated or controlled Kemira with respect to conspiracy activities as alleged below, and Kemira Oyj used that domination or control over Kemira to charge Plaintiffs and others artificially higher prices for Hydrogen Peroxide and Persalts which proximately caused injury and damages to Plaintiffs and others.

30.     Kemira Chemicals, Inc. and Kemira Oyj are collectively referred to in this Complaint as the "Kemira Defendants."

31.     During time periods relevant to the allegations in this Complaint, Defendants and their co-conspirators each engaged in the anticompetitive conduct described in this Complaint in the United States and elsewhere with the intention that it would have, and it did have, a substantial and reasonably foreseeable adverse effect on the sale of Hydrogen Peroxide and/or Persalts to Plaintiffs and others in the United States and elsewhere, and that domestic effect, including artificially restricted supply of Hydrogen Peroxide and/or Persalts manufactured in the United States and/or artificially higher prices for Hydrogen Peroxide and Persalts sold to Plaintiffs in the United States, gives rise to this claim.

32.     The acts alleged in this Complaint to have been done by the Defendants and their co-conspirators were authorized, ordered or done by their respective officers, directors, agents, employees and/or representatives while actively engaged in the management of their respective companies or those of their co-conspirators, or were otherwise within the scope of their employment. Without intending to limit in any way the identity of people who participated on behalf of Corporate Defendants and their co-conspirators in the unlawful acts alleged in this

KENNY NACHWALTER, P.A.

Complaint, the following individuals participated in that conduct: Gareth Hall, Robert Monsen and Jean-Marie Demoulin of Solvay; and Dag Stromqvist and Borje Andersson of Akzo.  Discovery from Defendants and their co-conspirators is necessary to identify all individuals who participated in the unlawful acts alleged in this Complaint.

### CO-CONSPIRATORS

33.     Other natural people and entities not named as Defendants, including without limitation, Degussa Corporation and Degussa A.G., may have combined or conspired with Defendants and committed acts in furtherance of the illegal conspiracy set forth in this Complaint. Plaintiffs reserve the right to amend this Complaint to add other Defendants or allegations based upon further investigation and discovery in the case.

### PRODUCTS

#### Hydrogen Peroxide

34.     Hydrogen Peroxide is an inorganic chemical and oxidizing agent.

35.     Hydrogen Peroxide is a commodity product or possesses commodity-like characteristics.

36.     The market for the production of Hydrogen Peroxide is concentrated, and during time periods relevant to the allegations in this Complaint, that market was dominated by Defendants and their co-conspirators.  During time periods relevant to the allegations in this Complaint, there were barriers to entry regarding the production of Hydrogen Peroxide.

37.     Defendants and their co-conspirators are the dominant producers of Hydrogen Peroxide.

16

KENNY NACHWALTER, P.A.

**Persalts**

38.     Persalts refer, individually and collectively, to Sodium Perborate and Sodium Percarbonate.  Persalts have cleaning, bleaching and stain-removing capabilities and are used in the production of detergents, toothpaste and other products.

39.     Persalts are a commodity product, or possess commodity-like characteristics.

40.     The market for the production of Persalts is concentrated, and during time periods relevant to the allegations in this Complaint, that market was dominated by Defendants and their co-conspirators.  During time periods relevant to the allegations in this Complaint, there were barriers to entry regarding the production of Persalts.

41.     Defendants and their co-conspirators are the dominant producers of Persalts.

**Relationship Between Hydrogen Peroxide and Persalts**

42.     Hydrogen Peroxide is a major and/or important input and/or cost in the manufacture of Persalts.  During time periods relevant to the allegations in this Complaint, Defendants and their co-conspirators were vertically integrated in that they manufactured Hydrogen Peroxide and consumed Hydrogen Peroxide in the production of Persalts.  As such, during time periods relevant to the allegations in this Complaint, there was a relationship between pricing and/or production of Hydrogen Peroxide and pricing and/or production of Persalts.  Defendants and their co-conspirators were aware of this relationship, and they knew that by engaging in unlawful conduct as alleged in this Complaint in the United States and/or elsewhere that manipulated the price (*e.g.*, fixed, increased, maintained or stabilized) and/or manipulated the supply of Hydrogen Peroxide (*e.g.*, fixed, decreased, maintained or stabilized) they could (and did) manipulate the price of Persalts that they sold directly to Plaintiffs and others in the United States and elsewhere.

17

KENNY NACHWALTER, P.A.

## TRADE AND COMMERCE

43.     During time periods relevant to the allegations in this Complaint, Defendants and their co-conspirators engaged in business that affects or is within the flow of interstate commerce, and the effect of that business on interstate commerce is substantial.  In particular, the activities of Defendants and their co-conspirators are within the flow of interstate commerce or have a substantial effect upon interstate commerce in that:

(a)     Defendants and their co-conspirators sold and shipped substantial quantities of Hydrogen Peroxide and Persalts in a continuous and uninterrupted flow in interstate commerce to customers located in States other than the States in which the Defendants produced the Persalts.

(b)     Data, information, correspondence and/or financial material were exchanged between each Defendant in the State in which each is located, incorporated, or has its principal place of business and other States.

(c)     Money flowed between banks outside of the State in which each Defendant is located, incorporated, or has its principal place of business and other States.

## GOVERNMENT INVESTIGATIONS AND CRIMINAL PROCEEDINGS

44.     On or about March 14, 2006, the United States Department of Justice announced that Solvay S.A. had agreed to plead guilty to conspiring to fix the price of sodium perborate.

45.     On or about March 14, 2006, the United States Department of Justice announced that Akzo Nobel Chemicals International B.V. and Solvay S.A. had agreed to plead guilty to conspiring to fix prices of Hydrogen Peroxide sold in the United States and elsewhere.

18

KENNY NACHWALTER, P.A.

46.     On or about May 3, 2006, the European Commission found that the companies within each of the Defendant groups or co-conspirators identified above participated in unlawful conduct regarding Hydrogen Peroxide and Persalts.

47.     The foregoing agreements to plead guilty in the United States, and finding by the European Commission, merely define the minimum parameters of the unlawful conspiracy that is the subject of this Complaint. *See In re Vitamins Antitrust Litigation*, 2000 WL 1475705 at *11 (D.D.C. May 9, 2000) (Hogan, C.J.) ([T]he Court rejects the notion that the guilty pleas … foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention. The antitrust statutes expressly recognize that private plaintiffs may allege a conspiracy different in some respects from the conspiracy previously alleged by the government.") (citations omitted).

### TOLLING OF THE STATUTE OF LIMITATIONS AND FRAUDULENT CONCEALMENT

48.     The statutes of limitation as to Defendants' continuing antitrust violations were tolled, among other reasons, because of the following allegations which may be additive or read in the alternative.

(a)     Under 15 U.S.C. § 16(I), the statute of limitations is tolled until one year after the date of the conclusion of the United States' last criminal prosecution of Defendants and co-conspirators regarding Hydrogen Peroxide and/or Persalts.

(b)     The pendency of class action complaints against Defendants for conspiring to fix prices of Hydrogen Peroxide tolls the running of the statute of limitations.

(c)     Defendants' fraudulent concealment as alleged below tolled the statute of limitations.

19

49.     Plaintiffs did not know or suspect more than 4 years before filing this lawsuit that Defendants and/or their co-conspirators had agreed not to compete on the sale of Hydrogen Peroxide and/or Persalts to Plaintiffs or others.

50.     During time periods relevant to the allegations in this Complaint, each Plaintiff used a method of purchasing Persalts and Hydrogen Peroxide that caused it to believe in good faith at the time that it was receiving competitive prices for Persalts and Hydrogen Peroxide that it directly purchased from one or more Defendants or their co-conspirators.  Unfortunately, as alleged below, as a proximate result of the conspiracy, Defendants and their co-conspirators overcharged Plaintiff for Hydrogen Peroxide and Persalts during time periods relevant to each Plaintiff's antitrust claims despite each Plaintiff's due diligence.

51.     Defendants' and their co-conspirators' conspiracy was self-concealing which prevented Plaintiffs from discovering its existence more than 4 years before filing this lawsuit. Notwithstanding the self-concealing nature of their conspiracy, upon information and belief, Defendants and their co-conspirators wrongfully and affirmatively concealed the existence of their continuing combination and conspiracy from each Plaintiff by, without limitation, one or more of the following acts:

(a)     Providing Plaintiffs and others with false or misleading explanations for the increase in prices of Hydrogen Peroxide and/or Persalts so as to create the illusion that such changes in prices were the result of unilateral conduct when, in fact, they were the product of collusion.

(b)     Issuing price announcements for Hydrogen Peroxide and/or Persalts so as to create the illusion of competitive pricing in the industry when, in fact, the pricing was not competitive.

20

KENNY NACHWALTER, P.A.

(c)     Instructing members of the conspiracy not to divulge the existence of the conspiracy to others not in the conspiracy.

(d)     Confining the anticompetitive, unlawful plan to a limited number of people and key officials at each Defendant company.

(e)     Avoiding either references in documents or the creation of documents otherwise generated in the ordinary course of Defendants' and/or their co-conspirators' businesses, regarding conduct which would constitute an antitrust violation or anticompetitive act.

(f)     Destroying documents which would reflect an antitrust violation or anticompetitive act.

(g)     Conducting covert, secret conspiracy communications or meetings in the United States.

(h)     Submitting prearranged, complementary losing bids on contracts for the sale of Hydrogen Peroxide and/or Persalts so as to create the illusion of competition when, in fact, the bids were not competitive.

(I)     Using code names or code numbers to conceal the identity of co-conspirators in documents that would otherwise reflect an antitrust violation or anticompetitive act.

52.     Each Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon before the statute of limitations was tolled because of the self-concealing character of the conspiracy and/or because of Defendants' and their co-conspirators' fraudulent concealment of the conspiracy as alleged above.

53.     Each Plaintiff's claims have been brought within the applicable limitations period.

KENNY NACHWALTER, P.A.

## ANTITRUST VIOLATIONS

### Count I
### Hydrogen Peroxide

54.    Plaintiffs incorporate by reference as if alleged in this Count the allegations in paragraphs 1-53 above.

55.    Beginning at least as early as approximately January 1, 1994, and continuing until at least December 2002, with an impact that lasted longer, Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy not to compete on the sale of Hydrogen Peroxide in unreasonable restraint of trade and commerce in *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

56.    The contract, combination and conspiracy among Defendants and their co-conspirators described in the immediately preceding paragraph consisted of a continuing course, pattern and practice of conduct regarding the production, pricing and sale of Hydrogen Peroxide in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

57.    The course, pattern and practice of conduct described above included, among other things, a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms and purpose of which were:

(a)    To fix, stabilize, maintain and/or raise Hydrogen Peroxide prices in the United States and elsewhere;

(b)    To allocate the volume of sales and/or market share of Hydrogen Peroxide in the United States and elsewhere;

(c)    To allocate contracts to supply Hydrogen Peroxide in the United States and elsewhere; and/or

KENNY NACHWALTER, P.A.

(d)    To control or reduce the output of and/or capacity to produce Hydrogen Peroxide in the United States and elsewhere.

58.    In order to formulate and effect the foregoing illegal combination and conspiracy, Defendants and their co-conspirators engaged in one or more of the following overt acts:

(a)    They agreed to exchange and did exchange current and future price information about Hydrogen Peroxide;

(b)    They agreed to coordinate and did coordinate price levels and price movements of Hydrogen Peroxide;

(c)    They agreed on prices and price levels of Hydrogen Peroxide;

(d)    They agreed to fix, stabilize, maintain and/or increase, and fixed, stabilized, maintained and/or increased, price and price levels of Hydrogen Peroxide in relation to each other;

(e)    They agreed to allocate and allocated Hydrogen Peroxide customers or sales volume, or both, among themselves;

(f)    They agreed to allocate and allocated market share of Hydrogen Peroxide among themselves;

(g)    They agreed to control or reduce, and did control or reduce, the output of and/or capacity to produce Hydrogen Peroxide. When necessary during the conspiracy to adjust for changes in market conditions, Defendants and their co-conspirators agreed to and did restrict output by closing plants, closing production lines, taking prolonged or unreasonable downtime and/or delaying or cancelling plans to expand capacity. Such conduct occurred among Defendants during approximately the 1997-1998 period. In addition, or in the alternative,

(h)    They agreed to stabilize, fix, maintain and/or increase, and did stabilize, fix, maintain and/or increase, the price of Hydrogen Peroxide sold outside (or inside) the United States

KENNY NACHWALTER, P.A.

with the intention of stabilizing, fixing, maintaining and/or increasing, and in fact stabilizing, fixing, maintaining and/or increasing, the price of Hydrogen Peroxide sold in (or outside) the United States; and/or with the intention of preventing or discouraging, and in fact preventing or discouraging, Hydrogen Peroxide purchasers in the United States from buying Hydrogen Peroxide outside the United States, or Hydrogen Peroxide purchasers outside the United States from buying Hydrogen Peroxide in the United States, *i.e.*, arbitrage.

59.     Upon information and belief, Defendants and their co-conspirators entered into and refined their illegal combination and conspiracy through, among other things, participating in conversations and meetings in the United States and elsewhere to discuss the prices of Hydrogen Peroxide to be sold in the United States and elsewhere; participating in conversations and attending meetings in the United States and elsewhere concerning implementation of and adherence to their conspiracy; issuing price announcements and price quotations in the United States and elsewhere in accordance with the conspiracy; and/or exchanging information on the sale of Hydrogen Peroxide in the United States and elsewhere.

60.     As a result of Defendants' and their co-conspirators' conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and during times relevant to the allegations in this Complaint:

(a)     Price competition in the sale of Hydrogen Peroxide among Defendants and their co-conspirators to Plaintiffs and others has been restrained, suppressed and eliminated;

(b)     Prices for Hydrogen Peroxide sold by Defendants and their co-conspirators have been raised, fixed, maintained and/or stabilized at artificially high and noncompetitive levels throughout the United States and elsewhere; and

24

KENNY NACHWALTER, P.A.

(c)     Plaintiffs and other direct purchasers from Defendants of Hydrogen Peroxide made by Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

61.     Plaintiffs have been injured in their business or property by reason of Defendants' and their co-conspirators' antitrust violations in amounts not yet ascertained.  Plaintiffs' injury as direct purchasers of Hydrogen Peroxide is injury of the type the antitrust laws was designed to prevent and flows from that which makes Defendants' and their co-conspirators' acts unlawful.

62.     Plaintiffs are threatened by continuing loss and damage as a result of Defendants' and their co-conspirators' unlawful conduct, and Plaintiffs are entitled to injunctive relief.

## Count II
## Persalts

63.     Plaintiffs incorporate by reference as if alleged in this Count the allegations in paragraphs 1-53 above.

64.     Beginning at least as early as approximately January 1, 1994, and continuing until at least December 2002, with an impact that lasted longer, Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy not to compete on the sale of Persalts to Plaintiffs and others in unreasonable restraint of trade and commerce in *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

65.     The contract, combination and conspiracy among Defendants and the ir co-conspirators described in the immediately preceding paragraph consisted of a continuing course, pattern and practice of conduct regarding the production, pricing and sale of Persalts sold to Plaintiffs and others in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

KENNY NACHWALTER, P.A.

66.     The course, pattern and practice of conduct described above included, among other things, a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms and purpose of which were:

(a)     To fix, stabilize, maintain and/or raise Persalts prices sold to Plaintiffs and others in the United States and elsewhere;

(b)     To allocate the volume of sales and/or market share of Persalts sold to Plaintiffs and others in the United States and elsewhere;

(c)     To allocate contracts to supply Persalts sold to Plaintiffs and others in the United States and elsewhere; and/or

(d)     To control or reduce the output of and/or capacity to produce Persalts in the United States and elsewhere.

67.     In order to formulate and effect the foregoing illegal combination and conspiracy, Defendants and their co-conspirators engaged in one or more of the following overt acts:

(a)     They agreed to exchange and did exchange current and future price information about Persalts;

(b)     They agreed to coordinate and did coordinate price levels and price movements of Persalts;

(c)     They agreed on prices and price levels of Persalts;

(d)     They agreed to fix, stabilize, maintain and/or increase, and fixed, stabilized, maintained and/or increased, price and price levels of Persalts in relation to each other;

(e)     They agreed to allocate and allocated Persalts customers or sales volume, or both, among themselves;

KENNY NACHWALTER, P.A.

(f)      They agreed to allocate and allocated market share of Persalts among themselves;

(g)      They agreed to control or reduce, and did control or reduce, the output of and/or capacity to produce Persalts.  When necessary during the conspiracy to adjust for changes in market conditions, Defendants and their co-conspirators agreed to and did restrict output by closing plaints, closing production lines, taking prolonged or unreasonable downtime and/or delaying or cancelling plans to expand capacity.  In addition, or in the alternative,

(h)      They agreed to stabilize, fix, maintain and/or increase, and did stabilize, fix, maintain and/or increase, the price of Persalts sold outside (or inside) the United States with the intention of stabilizing, fixing, maintaining and/or increasing, and in fact stabilizing, fixing, maintaining and/or increasing, the price of Persalts sold in (or outside) the United States; and/or with the intention of preventing or discouraging, and in fact preventing or discouraging, Persalts purchasers in the United States from buying Persalts outside the United States, or Persalts purchasers outside the United States from buying Persalts in the United States, *i.e.*, arbitrage.

68.      Upon information and belief, Defendants and their co-conspirators entered into and refined their illegal combination and conspiracy through, among other things, participating in conversations and meetings in the United States and elsewhere to discuss the prices of Persalts to be sold in the United States and elsewhere; participating in conversations and attending meetings in the United States and elsewhere concerning implementation of and adherence to their conspiracy; issuing price announcements and price quotations in the United States and elsewhere in accordance with the conspiracy; and/or exchanging information on the sale of Persalts in the United States and elsewhere.

KENNY NACHWALTER, P.A.

69.     As a result of Defendants' and their co-conspirators' conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and during times relevant to the allegations in this Complaint:

(a)     Price competition in the sale of Persalts among Defendants and their co-conspirators to Plaintiffs and others has been restrained, suppressed and eliminated;

(b)     Prices for Persalts sold by Defendants and their co-conspirators have been raised, fixed, maintained and/or stabilized at artificially high and noncompetitive levels throughout the United States and elsewhere; and

(c)     Plaintiffs and other direct purchasers of Persalts from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

70.     Plaintiffs have been injured in their business or property by reason of Defendants' and their co-conspirators' antitrust violations in amounts not yet ascertained.  Plaintiffs' injury as direct purchasers of Persalts is injury of the type the antitrust laws was designed to prevent and flows from that which makes Defendants' and their co-conspirators' acts unlawful.

71.     Plaintiffs are threatened by continuing loss and damage as a result of Defendants' and their co-conspirators' unlawful conduct, and Plaintiffs are entitled to injunctive relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for the following relief in Counts I and II:

(a)     A jury verdict in the amount of the compensatory damages sustained by Plaintiffs.

(b)     A judgment against Defendants, jointly and severally, by the Court in treble the amount of the jury verdict, in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15, and for attorney's fees, costs and interest as allowable by law.

KENNY NACHWALTER, P.A.

(c)     A permanent injunction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants from future violations of the antitrust laws and from practices which facilitate those violations.

(d)     Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable by right to a jury.

Dated: May __18__, 2006

Respectfully submitted,

KENNY NACHWALTER, P.A.
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Kevin J. Murray, Esquire
James Almon, Esquire
201 S. Biscayne Blvd., Suite 1100
Miami, Florida  33131
Tel:     (305) 373-1000
Fax:     (305) 372-1861
E-mail:  wblechman@knsacs.com

By: _____
William J. Blechman

253945.1

29